First case is United States v. Kesee. May it please the Court, my name is John Rood and I represent Travis Keesee in the appeal in this case. Mr. Keesee was arrested in July, actually July 13, 2000, in Flagstaff, Arizona, by the Flagstaff Police Department. Incident to that arrest, officers searched a motorhome that Mr. Kesee was found in. Based on evidence discovered during the initial arrest of Mr. Kesee in the motorhome, the officers obtained a warrant. As a result of the issuance of the warrant, a safe inside the mobile home was opened. A handgun, along with Mr. Kesee's wallet and some other identification, were found in that safe. And as a result, he was charged and eventually convicted of a felon in possession. As a result of his prior record, he was sentenced as an armed career criminal to 180 months with the Bureau of Prisons. Prior to trial, his initial attorney filed a motion to suppress. Help me with something on that motion to suppress. It looks as though there was pretty good argument that nobody really had evidence that Kesee and the woman were married or living together, and that means it's not a domestic violence under applicable state law. But it looks as though that ground was not urged when the motion to suppress was made in the district court, and since it was not urged, that it's waived under right. Tell me what the answer to that is. Well, I don't necessarily disagree with And I've been looking for quite a while for just cause so that this court can look at something else. I guess one of my answers to the court would be that the argument to the district court was a probable cause argument. And in order to have probable cause, there must be a showing of a relationship between this woman and this man. At what point did the officers talk to the woman? I mean, she said she was his wife. My impression in reading all the pleadings as well as the motion to suppress were that there was a significant assumption made by the lawyers close to this case and others after he had been arrested, after the police officer had entered the mobile home, after the police officer had determined there were various items in the mobile home that, quote, didn't belong to him because they were aware of his name based on a call made to determine the license plate number and the owner of the vehicle. They found his name. The counsel pre-arrest, wasn't there an interview of the victim? There was. I think that was the question that Judge Canby was addressing. And didn't she at that point represent to the officers that she was the wife? I don't believe that's the case. And I don't believe the officer knew that. Either the officer that interviewed her initially went into the got a employee of the store to go in and take her out of the bathroom and talked to her. The concern was for that officer whether she was hurt or assaulted, because initially she indicated to them that it was no big deal. Nothing happened. Then she broke down and gave more information. But she did not at that time indicate that she was his wife. That's my understanding. And the assumption was that she was. And obviously in the motion to suppress, one of his lawyers got up and said they had been in a relationship for 13 years. At one point in the pleadings, somebody indicated they were in some way in a common law relationship. These are, I believe, assumptions that the officers made that this was a domestic violence situation, that they then had a right to do certain things. And I believe that that was misinformation or a bad set of beliefs on the police officer's part. And I don't think that they were actually aware of the relationship of the parties. I gather from all this, you really still don't have anything to get around the waiver problem. As I do not have much to say what the waiver problem would be. Quite frankly, Your Honor, I think there are many attorneys and I'm not sure whether the law is in all states that you have to have a warrant if you're going to arrest for a misdemeanor. I think there are many lawyers that don't understand. There's a lot of variation on that. Right. I think it is not something that would necessarily jump out at a lawyer. Obviously, Mr. Ochoa cited in his motion to suppress the statute, which talks about with or without a warrant in a domestic violence or a domestic case. It seems to me, and I have no truck with the fact that I'm not sure what the state could have shown. Based on all the testimony, based on everything I've read, only after they brought her to the scene, after he'd been arrested, after the initial search had been conducted, did she indicate that she had an interest in this vehicle or that there was a relationship between them? As I recall, tell me if I've got this time sequence right, store calls, police come, store calls about two people fighting in the parking lot, police come, a man and a woman, they pretty much assume it's a DV without really paying a lot of attention to it, arrest him and look around inside, and that's the critical look. And then she says half of that is mine, which is evidence that they have a domestic relationship. It's not quite that smooth. Okay, correct me. The police get a call, altercation. Officer responds to the scene. Once he arrives there, he has to locate the woman because she's not there. They understand that the man has gotten into a motorhome and left the area. They then talk to the woman, the officer radios another police officer who's in an unmarked car, who within five minutes, I believe the record is, finds this other vehicle, at which point he then approaches the vehicle. He has already radioed, found out the registered owner, knows the name of Mr. Kesey, calls out his name, gets no response, and at that point enters the vehicle. There is an initial search done. At some point later, they bring the woman, a Miss Josh, to the scene. It is only at that point that she makes any claim to the vehicle. And obviously living in the vehicle because they subsequently arrest her for possession, I think, of stolen mail or stolen property. It's only at that point that they determine that there is some sort of relationship. I'm going to reserve any time I have left for rebuttal. Thank you. Thank you, Counsel. Counsel. May it please the Court. My name is Fred Batista. I'm an assistant United States Attorney. I'm with the District of Arizona. My office is located in Phoenix. I was the trial counsel on this case. With respect to the issue of waiver, the defendant basically conceded this issue on the first page or the second page of his initial pleading. In the excerpt of record, page 9, the defendant states, when the woman, Leslie Josh, returned from the bathroom, she asserted, Officer Jay, that she had only had an insignificant argument with her husband, Traffic Travis Kesey. He conceded that, but maybe he's wrong, huh? Is that... In terms of... What did she... Is there any other evidence that she drove? In the record before the Court, in other words, what the government presented to the Court, there is no express statement of that fact. And the government did not present it because the defendant didn't raise it as an issue. The defendant raised three issues in his two motions to suppress. And so, as a result of the fact that the defendant did not raise it, the government did not respond to it. It is the government's understanding that the nature of the relationship... The officer at the Kmart was aware of the nature of the relationship. However, the government did not present any evidence... Nothing in the record except the concession to that fact. Correct. Correct, Your Honor. Okay. And then when we look at the second motion to suppress, the defendant, again, with his second counsel now, notes, discusses the domestic violence statutes in Arizona, and he cites certain parts of it, in his own words, in pertinent part, cites the domestic violence statutes, but makes no mention of certain definitions of domestic relationship. So not once, but twice, the defendant had a shot at raising this argument and did not raise the argument, and also then conceded both in pleadings and in open court that there was the relationship in this particular case. So as the defendant has noted in the right case, the government believes that this issue has been waived, and the Court has discussed the issue of potential cause, and the government's not aware of any cause that the defendant could raise in this case. The defendant conceded the issue. The parties, the man and woman, the defendant, they were married. So there's no... There's nothing... There's no cause or prejudice to the defendant in that this isn't a situation where they weren't married or they weren't living together. So in light of these facts, the government believes that the defendant has waived the issue, and the defendant has not presented any cause. The defendant has also raised a number of issues with respect to the Armed Career Criminal Act, three challenges, one of them being Apprendi, which this Court has clearly ruled that the Apprendi rules with respect to the use of prior convictions does not apply. In other words, the government did not have to present the prior convictions to a jury and prove them beyond a reasonable doubt for them to apply to the sentencing enhancement in this case, and that's the Summers and Pacheco-Zepeda case. The defendant makes an argument with respect to double jeopardy, but in his own brief, he acknowledges that this Court is bound by the decision in the United States v. Newton. Again, there's no double jeopardy issue in this particular case, and both the Eighth and the Fifth Circuit and the cases the government has cited also have clearly found that 924E, the Armed Career Criminal Act, there is no violation of the double jeopardy provisions with respect to the application of the defendant's sentencing. Finally, the defendant raises the issue of the time of the age of his convictions. The government was unable to find a Ninth Circuit decision on this, but there was five other circuits have all ruled that there's no time constraints with respect to the use of the age of prior convictions with respect to the Armed Career Criminal Act. So all three of the defendant's challenges to the defendant's sentences under the Armed Career Criminal Act are meritless. Take you back to your first issue. When they first went out to the trailer, did, what, they just knock on the door and he came out? Let me, let me run you through the facts, Your Honor. What happens is we have the scene at the Kmart. One officer is at the Kmart. He interviews the employee first. Then Mr. Kesey's wife is called out of the bathroom. They make a determination that they have probable cause to arrest him for domestic violence. They have a name of Mr. Kesey and they have a description of the vehicle. Another officer receives a radio call to be on the lookout for this motorhome. He sees a motorhome that fits the description of the motorhome, but he doesn't have a lot of information at that point. He goes up to the motorhome and calls out inside the motor, excuse me, when he first passes the motorhome, he sees Mr. Kesey sitting in the driver's seat, but he doesn't have any contact with him. He parks, checks on the radio. He goes back to the motorhome. Mr. Kesey's gone now. He yells into the motorhome. Flagstaff Police Department come out. Nobody comes out. But before he enters the motorhome, he then goes back and has radio contact and he confirms that he's looking for Travis Kesey. They do a registration check on the motorhome. That registration check comes back to Travis Kesey. So now he knows he's looking for Travis Kesey and he's got Travis Kesey's vehicle and he's seen an individual matching Travis Kesey's description sitting in the motorhome, but now he's gone. It's only at this point then that they make entry into the motorhome. This is one of these medium-sized motorhomes where there's a sleep compartment up above the driver and the passenger seat. So they go, they enter through the doors and Mr. Kesey is lying up on top of the bunk, on top of the driver and passenger seat, pretending to sleep, but he's got an unlit cigarette in his mouth. You argued, I think, that that's still not an arrest going on here. Is that right? No, Your Honor. They are seeking to arrest him for the... They're okay. So they're making the arrest. They are, Your Honor, yes, because they have the officer Serrano at the K-mark. He has testified that he believed that he had probable cause to arrest a defendant for the misdemeanor offense of domestic violence. And can they make that arrest without a warrant by entering his... Yes, Your Honor. Because it's a motor vehicle, it's not a residence. At this particular time, this motorhome is not being used at... It's not a residence. Well, it's sort of... If they had gone to a trailer park... It's mobile. It's actually mobile. This one's mobile. Obviously, if they'd gone to a trailer park and it had the hookups and everything, they didn't need a warrant. I thought this wasn't the trailer at all. It's more like somebody living in his car. It's a motorhome and pictures were offered at the lower court. I thought this was the... When you say motorhome, the word is used in the industry to mean those things that sit on a pad and they stay there. And it's also used to mean what people drive to their fishing holes. And I took it when I looked at this that Kesey had, in fact, driven this just a few minutes before. Correct, Your Honor. That it's the kind that you drive around. It is mobile. It's not a mobile home. It's a motorhome. So it has an engine. It has a driver's compartment. And he drove it from the Kmart basically around the corner and was basically hiding in an apartment complex that he had no connection to near where he had just had the incident with Ms. Josh's wife. And as I understood it, the government had no occasion to put on evidence that Josh had said half of what's in there is mine or I'm his wife or any evidence of a domestic relationship because the motion to suppress had said that it was an argument with their husband. So it just wasn't... Correct, Your Honor. ...in front of you. And I, again, I handled it at the court below. I treated the matter as having been conceded that Mr. Maynard, the defendant's first counsel in the motions hearing, conceded the relationship both in pleadings and to the court. So the government treated it as that never being raised. That's why there's no information regarding that particular relationship in the record. Thank you. Thank you, counsel. Just very briefly to the court. Obviously, Mr. Bautista knows this case since he tried it and knows the parties. And obviously, the pleadings and an argument to the court, they talked about a relationship. He says Ms. Josh is Mr. Kesey's wife. Your Honor, I have no idea, based on the record, whether she is or isn't. And that's something that the record doesn't show here. But, counsel, we are entitled to rely upon the pleadings network. Your Honor. Thank you. Thank you, counsel. United States v. Kesey is submitted.
judges: Canby, Kleinfeld, Rawlinson